WILLIAM STOCKLEY DANIELS, Defendant Below, Appellant, v. CARRIE DANIELS, Plaintiff Below, Appellee.

(*October* 26, 1953.)

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, J. J., sitting.

*A. James Gallo* and *Howard Duane* for appellant.

*H. Albert Young* for appellee.

Supreme Court of the State of Delaware, No. 13, 1953.

WOLCOTT, J.:

The question for decision is whether or not a single act of sexual intercourse following the entry on the wife's petition of a decree *nisi,* but before the entry of a final decree, will *ipso facto* defeat the right of the wife to the divorce.

The facts of the case are as follows:

Throughout their married life the husband and wife were farmers. The wife lived a life of drudgery and was prematurely aged by hard work and child-bearing. As a result of their joint efforts, substantial property was accumulated, title to which was taken in the name of the husband, with one minor exception. About two and one-half years ago the husband tired of his wife and entered into an illicit liaison with another woman. At some later date the wife discovered her husband's infidelity and separated from him. Thereafter, she lived alone on one of the two farms owned by the husband, and brought suit for divorce on the ground of her husband's adultery. A decree *nisi* was entered on her petition on February 4, 1953.

Immediately before the separation, only the two youngest sons lived with their parents, the other children having married and moved away. The eldest of these two sons was killed under an overturned tractor, his body remaining in the field until its discovery the following morning. Her son's death left his mother grief-stricken. Her grief did not ease with the passage of time. The youngest son remained with the husband after the separation.

The wife at the time of the divorce proceeding and subsequently was an ill, lonely and grief-stricken woman. She lived

alone with no money to support herself. Her husband had been placed under a support order for her benefit, but as of March 6, 1953 was upwards of $400 in arrears.

On March 6, 1953, the husband came to the farm where the wife was living to inspect some cattle. The wife went out to the barn, and they drove back in his truck to the farm house. They entered the living room. The husband made advances to his wife which she resisted, twice attempting to leave the room but each time being grabbed by the husband. Finally, the wife submitted to sexual intercourse. When the act was over the husband remarked to the effect that his lawyer would be glad to hear of the occurrence, and that the divorce was now ended. Other remarks of the husband, both prior to and following the act of sexual intercourse, justify the conclusion that the husband entered the wife's house with the formed intention of having sexual intercourse with his wife in the belief that that act would defeat the right of divorce she had asserted against him. His subsequent actions strengthen that conclusion.

Upon the completion of the act, the husband and wife left together, went to Dover for the afternoon, and returned to the farm where the husband lived with the youngest son. The wife prepared supper, and thereafter the three of them watched television until bedtime. The husband, with apparently no thought of his wife's comfort, retired to bed in an upstairs room with the son. No other bed was in the house. The wife, left to her own devices, lay down fully clothed on a couch in the living room. At least once, the wife went upstairs, sat on the bed occupied by her husband and son, and made overtures to her husband. He rejected her advances.

The wife thereafter wandered outside for awhile, going on one occasion to a neighbor's, a relative of her husband, and asked him what she should do. Finally, she returned to her husband's house and slept fully clothed on the living room couch. In the morning, she prepared breakfast. At her request, without any attempt to dissuade her, the husband returned her to the farm where she lived.

The foregoing narrative of facts, with which the parties do not take exception, must be considered in the light of the character of the parties. The husband is described by the trial judge as a "hard man and a mean man". We think the trial judge could have gone farther and added that the husband's meanness and hardness was cold, calculating, and devoid of the slightest feeling of compassion for the distraught woman who was his wife.

That the wife was distraught admits of no doubt. She was an ill woman; in the opinion of the State Psychiatrist, on March 6, 1953, a psychiatric case. She was lonely, penniless, starved for affection, and grief-stricken over the death of her son. Despite the emotional stress she was subjected to, she was apparently willing to become reconciled to her husband and to resume cohabitation with him. This we think, overcame her initial struggles against her husband's advances on March 6, 1953, and led to her willing participation in the single act of sexual intercourse on which the husband now lays such stress. She regarded it as the consummation of their reconciliation.

However, the trial judge, correctly we think, found as a fact that the husband's actions on that day were "no reconciliation but a cold-blooded attempt to defeat her divorce and legal right to a division of property". The husband in effect tricked his wife into an act of sexual intercourse which he thought would require the decree *nisi* to be vacated.

The wife, in her loneliness and upset condition, undoubtedly was willing to effect a reconciliation and to rejoin her husband and son. Otherwise, it is impossible to explain her voluntary return to her husband's home. However, her hopes in that regard were soon coldly rebuffed by her husband. The conclusion is inescapable that he at no time intended a true reconciliation with his wife. His only intention was to lure his wife into a situation which would defeat her divorce and prevent a fair division of the property amassed with her aid.

The husband's acts were fraudulent; they were designed to deceive. They were the acts of a cheat. This being so, there was no condonation by the wife of the husband's prior adultery within the meaning of 13 *Del. C.* § 1524. Under the general rule, three essential elements must concur to constitute condonation, viz., (1) knowledge of the wrong by the injured party; (2) forgiveness or remission of the wrong by the injured party, and (3) the resumption of the marital status. *Cf. Greco v. Greco*, 2 *W. W. Harr.* 242, 121 *A.* 666.

Under the general rule of condonation, therefore, the husband's acts in this case fall short of what is required of him. Condonation by a wife is always conditional, and not an absolute forgiveness. It is conditioned upon assurance that the offender will not repeat his offense and will restore the injured wife to conjugal kindness and affection. 27 *C. J. S., Divorce,* § 59; *Shackleton v. Shackleton*, 48 *N. J. Eq.* 364, 21 *A.* 935. Certainly, a husband who deceives his wife into the commission of a single act of sexual intercourse, from which condonation under some circumstances might be implied, intending only thereby to prevent a division of the property amassed by their joint efforts, does not approach his wife as a penitent, imploring forgiveness and asking for a restoration of their conjugal relations. As a matter of law, we think, under those circumstances, the husband's motive and his speedy rejection of his wife's overtures wipe out whatever forgiveness she might at first have contemplated.

The husband, however, argues that 13 *Del. C.* § 1524, has no application in this case, and that, accordingly, the general rule of condonation is immaterial to its decision. He argues that this case is governed solely by 13 *Del. C.* § 1528, which in pertinent part provides as follows:

"On a petition for divorce for the cause of adultery, if the defendant * * * proves that the plaintiff * * * has admitted the defendant into conjugal society or embrace after knowledge of the adultery, * * * the petition shall be dismissed.* *"

The argument is that § 1528 makes a single act of voluntary sexual intercourse by a wife with her husband, subsequent to a decree *nisi*, but prior to final decree, a complete bar to the wife's right to a divorce for the prior adultery of the husband, irrespective of whether or not the various elements of condonation are present.

We will assume that 13 *Del. C.* § 1528, is applicable, although we have doubt that it is anything more than a procedural statute designed to govern the pleading and proof of the affirmative defenses of recrimination and condonation. We will also assume that the use of the singular "embrace" in § 1528 makes a single act of sexual intercourse an absolute bar to the right to divorce, irrespective of whether the elements of condonation are present. We express no opinion, however, on the correctness of these two assumptions. We make them because, in our view of this case, the result will be the same whether they are accepted or rejected.

We will assume, therefore, that 13 *Del. C.* § 1528 governs the case at bar, and that a single act of sexual intercourse between husband and wife will bar the wife's right to a divorce on the ground of the husband's adultery. It is to be noted, however, that the single act must be voluntary on the part of the wife. The husband concedes this, agreeing that a single act brought about by force would not be sufficient under the statute.

██ The trial judge found as a fact that the wife submitted to the husband willingly after her first reluctance was overcome. He also found as a fact, and we think correctly, that she did so in the belief that her husband desired to effect a reconciliation and to resume cohabitation. As we have pointed out, the husband's true motives were far removed from reconciliation. He was motivated solely by a sordid desire to avoid the payment of support and the division of property. As such, his action constituted the grossest sort of fraud on his wife, who, despite his past mistreatment, was apparently willing to let bygones be bygones, and to try again. Since he perpetrated a

fraud upon his wife, he destroyed the voluntary nature of her submission to him, for fraud taints and vitiates everything it touches. 37 *C. J. S., Fraud*, § 5.

The result, therefore, is that the voluntary nature of the submission of the wife to the single act of sexual intercourse having been removed, the husband has failed to prove a bar to divorce under 13 *Del. C.* § 1528, assuming the construction of that statute urged by the husband.

The judgment below is affirmed.