227 So.2d 14 (1969)
Vergil Dupre HICKMAN, Petitioner in Habeas Corpus Proceeding, Respondent,
v.
Nellie Jo Price HICKMAN, Defendant in Habeas Corpus Proceeding, Relator.
No. 2915.
Court of Appeal of Louisiana, Third Circuit.
September 24, 1969.
Dissenting Opinion October 13, 1969.
Rehearing Denied October 17, 1969.
*15 Ford & Nugent, by Howard N. Nugent, Jr., Alexandria, for defendant-relator.
Gravel, Roy & Burnes, by Richard Burnes, Alexandria, for plaintiff-respondent.
Before TATE, SAVOY, HOOD, CULPEPPER and MILLER, JJ.
TATE, Judge.
We granted supervisory writs to assure immediate review of a trial court judgment awarding a father-husband custody of the three minor girls (ages 12, 10, and 6) of the marriage.
The father's right to the children is founded on a previous order granting him temporary custody during a pending suit for separation (with reconventional demand for divorce). The mother's essential defense is that this prior suit was extinguished by the reconciliation of the parties.
This matter has been before this court before. Our prior opinion fully summarizes the procedural context and the general principles applicable. Hickman v. Hickman, La.App., 218 So.2d 48. We there remanded to permit the wife to introduce evidence on her defense of rconciliation, which the trial court had previously ruled to be inadmissible.
After a two-day hearing on the habeas corpus proceeding, the trial court granted the husband judgment. By doing so, it sustained the husband's defense that the reconciliation of the spouses relied upon by the wife was not a true one. The husband contends that his wife fraudulently and deceitfully went back to live with him, for the sole purpose of defeating the temporary custody decree and with the full intention of leaving him after extinguishing his prior grounds for divorce and custody (alleged adultery).
The evidence at the hearing discloses the following:
In the divorce-separation suit, the trial court granted the respondent husband temporary custody of the children on May 25, 1969. The evidence shows that the husband and the wife commenced again to live together as man and wife on July 27, 1968. They remained together until October 13, 1968.[1] This period of reconciliation thus lasted 78 days, or two months and 18 days.
Although the reconciliation was at the wife's instance, the husband admits that he desired it for the sake of the children and because he loved his wife. He further admitted that he forgave her at the time.
Without contradiction, the evidence further shows (as alleged by the wife's answer to the habeas corpus petition) that, during this extended period of reconciliation, the husband and wife:
A. Slept in the same bed and bedroom;
B. Lived as husband and wife and engaged in marital relations;
C. In general, were with each other continuously in private and public, and frequently indulged in public displays of affection, by kissing, holding hands, etc., when meeting or together;
D. Were friendly and pleasant in conversation, both in public and in private;
E. Ate meals at the family home together;
F. Went together to pick up the children after work daily;
G. Engaged in family recreational activities, including picnics, church *16 activities and horseback riding for the children;
H. Went on a family vacation out of state together;
I. Each day rode to and from work with each other;
J. Shared their lunch hour with each other almost daily during the work week;
K. Deposited their pay checks in the same joint bank account and drew checks on that said account for the family expenses and obligations.
The wife testified that the parties lived together without any discord whatsoever until the last two to four weeks, when, she testified, further cruel treatment by her husband made living together insupportable. The husband testified the couple lived together without any discord whatsoever before the wife took the children and left him Sunday morning, October 13, 1968.
Despite this evidence, the trial court held that the reconciliation, on the wife's part, was fraudulent and the manifestation of a bad faith scheme to circumvent the prior order depriving her of temporary custody of the children. Thus, according to the trial court, the husband's condonation of the wife's past offenses was secured by deceit; and thus no legal reconciliation or condonation had occurred which extinguished the prior separation-divorce suit and temporary custody order therein.
In so holding, the trial court relied upon certain testimony of alleged admissions to this effect made by the wife individually to several other people. The wife denies them, and her counsel attacks this testimony as incredible or the result of misinterpretations.
We need not, however, evaluate the evidence to this effect, which is well summarized by the trial court in its excellent oral reasons for judgment. For we have concluded that, despite any initial actual or semi-intended deception, reconciliation and condonation as a matter of law occurred where the parties lived together in full marital relations for such an extended period of time.
In several jurisdictions it has been held that a reconciliation induced by fraud and deceit does not operate as a condonation. Annotation, DivorceCrueltyCondonation, 32 A.L.R.2d 107, Section 16 at 152 (1953); 24 Am.Jur.2d "Divorce and Separation", Section 219 (1966); 27A C.J.S. Divorce § 60, at 203 (1959). Counsel inform us that the question has not been at issue in any reported Louisiana decision.
The doctrine might be applicable in this state upon proof that a cohabitation of hours or a few days was not sincere but, rather, a scheme on the part of one spouse to defeat an advantage obtained by the other in pending marital litigation. We pretermit deciding this, because we feel that living together as man and wife in the full sense for such an extended period of time as a matter of law amounts to reconciliation and a condonation by both of the spouses of prior misconduct.[2] To hold otherwise would sanction second-thoughts and re-airing of stale grievances when reconciliations end in later discord, contrary to the general policy of our law that the reconciliation amounts to a fresh start cleansing past dirty linen.
The authorities from other states relied upon by the respondent husband without exception concern instances where the fraudulent "reconciliation" was over within hours or a few days, thus tending to corroborate the fraudulent character of the initial "reconciliation".[3] To the contrary, the present *17 extended period of full reconciliation amounts as a matter of law to mutual condonation of past faults.
This being the case, it is unnecessary to consider the substantial contention that the husband's own testimony indicates that he was not misled into a reconciliation and into thus condoning his wife's prior misconduct. He admitted that, prior to a resumption of marital relations with his wife, he had been informed of his wife's alleged plan to pretend to reconciliation in order to obtain the return of the children. Tr. 80-83. Also prior to having his wife return to him, the husband consulted his lawyer. Tr. 83, 93, 273. Nevertheless, fully realizing the legal effect of the reconciliation, the husband testified, "I took the gamble after talking to [my lawyer] * * * that it would work out * * *." Tr. 93. See also Tr. 274.
Having found that the reconciliation extinguished the grounds for the prior separation-divorce suit, it follows that the husband does not have right to custody since his claim for same is founded solely upon the temporary custody order entered in such prior litigation or the condoned past conduct there involved. Hickman v. Hickman, La.App.3d Cir., 218 So.2d 48.
The wife is entitled to custody pending disposition of her Grant Parish suit for separation. LSA-Civil Code Article 146.
For the reasons assigned, the judgment granting the husband custody of the children is reversed, and his habeas corpus proceedings are dismissed, at his cost.
Reversed and dismissed.
HOOD, Judge (dissenting).
I do not agree with the conclusions reached by the majority, primarily for the reasons which I assigned in dissenting from the majority's decision when this case was before us originally. See Hickman v. Hickman, La.App., 218 So.2d 48, 56.
The only issue which is before us at this time is whether the judgment of the trial court rendered on August 27, 1969, in a Habeas Corpus proceeding is correct. In that proceeding the trial judge maintained the writ of habeas corpus and commanded that the three minor children, issue of the marriage of the parties to this suit, be returned to the father, Mr. Hickman. The same court previously, on November 8, 1968, had signed an interlocutory decree, incidental to the pending divorce action, granting the temporary custody of the children to the father pending that suit, all pursuant to LSA-C.C. Art. 146. In maintaining the writ of Habeas Corpus the trial court was merely enforcing its earlier interlocutory judgment.
*18 The majority opinion being rendered here reverses the judgment of August 29, 1969, and dismisses the habeas corpus proceeding. Although this matter is before us solely in a habeas corpus proceeding, my colleagues have inquired into the merits of the divorce action which is pending separately, and they have concluded that a reconciliation took place between the parties after the separation and divorce suits were filed. For that reason, they have held that the interlocutory decree signed on November 8, 1968, granting temporary custody of the children to Mr. Hickman pending the trial of the suit, is invalid, and cannot be enforced by a habeas corpus proceeding.
In my opinion, the majority erred in considering the question of whether a reconciliation had taken place. The questions to be determined here, I think, are: (1) Was the divorce action instituted by Mr. Hickman (in a reconventional demand) filed in a court of proper jurisdiction? (2) Is that action still pending? and (3) Was the interlocutory decree of the trial court dated November 8, 1968, granting the temporary custody of the children to Mr. Hickman, issued incidental to the divorce suit and while it was pending?
The original suit for separation was instituted by Mrs. Hickman. Her husband reconvened for a divorce on the grounds of adultery. No one questions the fact that the original suit and the reconventional demand were filed in a court of proper jurisdiction, and the record shows that neither of these actions has been tried. Mrs. Hickman later dismissed her action for a separation, but her husband's reconventional demand for divorce is still pending. The divorce action filed by Mr. Hickman thus was instituted in a court of proper jurisdiction, and that suit is still pending.
The interlocutory decree dated November 8, 1968, granting the temporary custody of the children to Mr. Hickman pending the trial of the case on its merits, was rendered after a hearing and it was rendered incidental to the pending divorce suit, pursuant to the provisions of LSA-C.C. Art. 146. I feel that the interlocutory decree, rendered in a pending divorce suit by a court of competent jurisdiction, constitutes sufficient authority in itself to maintain the writ of habeas corpus. I realize that habeas corpus proceedings have been used occasionally to determine child custody cases, but I do not think it is proper to broaden the use of that procedure to that extent in a case like this, where the same issues are presented in a pending divorce suit. I think the majority erred in considering the factual issue, raised only by Mrs. Hickman's special defense on the merits, that a reconciliation had taken place.
Although the majority has dismissed Mr. Hickman's separate habeas corpus proceeding, that judgment does not dispose of the pending divorce suit. Mr. Hickman, the plaintiff in the pending divorce action, surely cannot be deprived of his right to have that case tried on its merits. And, when it does come up for trial one of the important issues to be determined is whether Mrs. Hickman can establish by competent proof her special defense that a reconciliation took place between the parties. The burden of proof rests on her to prove the reconciliation, of course, and that can be done only when this case is tried on its merits. The issue of which there has or has not been a reconciliation is one which must be determined on the merits and not in an ancillary habeas corpus proceeding.
My colleagues have gone further, however, and have held that "The wife is entitled to custody pending disposition of her Grant Parish suit for separation." In order to make such a ruling the majority necessarily must have concluded: (1) That Mrs. Hickman had just cause to leave her husband and establish a separate domicile in Grant Parish; (2) That she, in fact, did establish a separate domicile in Grant Parish within a period of 24 hours after leaving the matrimonial domicile in Rapides Parish; (3) That the Grant Parish Court did, in fact, have jurisdiction in the case; and (4) That the ex parte order of the *19 Grant Parish Court, issued without a hearing and granting temporary custody of the children to Mrs. Hickman, is controlling over the custody decree of the Rapides Court which was issued after a contradictory hearing, and was reaffirmed after a two-day trial by the trial court of the parish in which the parties have been domiciled for many years.
None of the above mentioned issues are before this court now. They have never been presented to or considered by the trial court. And yet, the majority has ruled on all of them. I think my colleagues have erred in doing so.
Even if the issue of jurisdiction of the Grant Parish Court should be before us now, the evidence is convincing that Mrs. Hickman did not establish a separate domicile in that parish. In the first place the evidence which is in the record shows that she left the matrimonial domicile without cause, and thus she was not entitled to establish a separate domicile anywhere. Also, according to her own statements, she left the home in which she and her husband had been living in Rapides Parish about 9:30 A. M. on October 13, and she went to the city of Winnfield, in Winn Parish, where she spent the night in a motel. She travelled through Grant Parish en route to Winnfield, and after spending "an hour or so" visiting with her mother there, she then proceeded on to Winnfield. The suit was filed in her behalf in Grant Parish the following morning, October 14. In my opinion this evidence does not justify the conclusion apparently reached by my colleagues that she established a separate domicile in Grant Parish, even if that issue were before us.
For these reasons, as well as those previously assigned, I dissent.

On Application for Rehearing.
En Banc.
PER CURIAM.
The husband-respondent has filed an application for rehearing. Our original opinion has disposed of all contentions urged, except the complaint that, by stating that the wife is entitled to custody pending disposition of her suit for separation, we have ruled on certain issues that were not before us. We do not find merit in the suggestion of error.
We are not passing on the merits of the question of jurisdiction in Grant Parish. But we do hold that the Rapides Parish custody decree was extinguished (by the 78 days reconciliation) for the reasons set forth in the majority opinion.
On the basis of all pleadings before us, this litigation moves now to Grant Parish. Mr. Hickman can there question that court's jurisdiction. He can there question Mrs. Hickman's fitness, and is there entitled to a full evidentiary hearing on all issues.
Application for rehearing denied.
HOOD, J., dissents from the refusal to grant a rehearing.
FRUGÉ, J., votes for rehearing on grounds that trial court is correct.
NOTES
[1] On this last date, the wife left the husband. The following day, alleging she had returned to the pre-marital home in Grant Parish and had established domicile there, she filed a new suit for separation. Her grounds included a battery of September 27th, consistent cruel and humiliating conduct since then, and threat upon her life of October 12th. She thus alleged new grounds, following the reconciliation which had allegedly extinguished the grounds of the prior separation-divorce suit.
[2] Cf., e. g., Goetz v. Goetz, 180 Kan. 569, 306 P.2d 167 (1957) (11 months); Kinek v. Kinek, 331 Mich. 54, 49 N.W. 2d 58 (1951) (2 months).
[3] Daniels v. Daniels, 9 Terry 179, 99 A.2d 717 (Del.1953) (single act of intercourse); Hash v. Hash, 115 Ind.App. 437, 59 N.E.2d 735 (1945) (21 days); Farley v. Farley, 278 Mich. 361, 270 N.W. 711, 109 A.L.R. 678 (1936) (3 days); J. v. K., 419 S.W.2d 461 (Mo. App.1967) (unspecified but apparently brief duration); Fletcher v. Fletcher, 182 Neb. 549, 156 N.W.2d 1 (1968) (1 month); Rex v. Rex, 39 Ohio App. 295, 177 N.E. 527 (1930) (single act of intercourse); Panther v. Panther, 147 Okl. 131, 295 P. 219 (1931) (unspecified but apparently brief period of cohabitation); Belville v. Belville, 114 Vt. 404, 45 A.2d 571 (1946) (two instances of unspecified but apparently brief duration). In Hill v. Hill, 124 Or. 364, 264 P. 447 (1928), there was never a resumption of conjugal relations. In Chresst v. Chresst, 77 Idaho 486, 295 P.2d 704 (1956), the court reversed a trial court's dismissal on pleadings, holding that the wife was entitled to prove fraud or a breach of the conditions of reconciliation; this being a jurisdiction where, unlike Louisiana, a breach of the conditions of reconciliation by a repetition of the misconduct revives the original offense and the original cause of action. See Annotation, A.L.R.2d 107, Section 19 at 32 A.L.R.2d 160, Section 20 at 32 A.L.R.2d 163 (listing jurisdictions where condonation is regarded as conditioned on the implied condition that the original offense will not be repeated). This latter doctrine was also at issue in North v. Ringling, 149 Fla. 739, 752, 7 So.2d 476 (1940). The remaining cases cited by respondent contain no question of fraud: Huffine v. Huffine, 74 N.E.2d 764 (Ohio Com.Pl.1947); Cote v. Cote, 404 S.W.2d 139 (Tex.Civ.App.1966).