394 So.2d 1291 (1981)
Jo Ann Ballard JORDAN
v.
Herman Larry JORDAN.
No. 13909.
Court of Appeal of Louisiana, First Circuit.
January 26, 1981.
Philip R. Riegel, Jr., New Orleans, for plaintiff-appellee.
Gerald J. Martinez, Metairie, for defendant-appellant.
Before COVINGTON, CHIASSON and LEAR, JJ.
COVINGTON, Judge.
This is an appeal by the defendant, Herman Larry Jordan, from a judgment in favor of the plaintiff, Jo Ann Ballard Jordan, decreeing a separation from bed and board between the parties on the ground of abandonment; granting custody of the minor child, Scott Alan Jordan, to the plaintiff, with reasonable visitation rights accorded the defendant; and dismissing the reconventional demand for separation in favor of the defendant on the ground of cruel treatment. We affirm.
The original petition alleged that on February 18, 1977, the defendant had obtained a judicial separation, which was now null because of a reconciliation between the parties thereafter. The petition further alleged that subsequent to the reconciliation the husband had abandoned the wife and she was now entitled to a separation. The *1292 defendant then filed an answer and reconventional demand denying that there had been a reconciliation and urged that the February, 1977, judgment of separation be recognized as valid and a proper defense to the present action.
The appellant first contends that the trial court erred in finding a reconciliation between the parties. Our jurisprudence is now established that reconciliation is a matter of mutual intent, to be judicially determined in the light of the totality of circumstances of each particular case; proof of isolated acts of sexual intercourse between the parties is not conclusive of intent to reconcile, but is merely one of the factors to be considered in determining mutual consent and agreement to reconcile. Halverson v. Halverson, 365 So.2d 600 (La. App. 1 Cir. 1978).
In Millon v. Millon, 352 So.2d 325, 327 (La.App. 4 Cir. 1977), the Court said:
"Reconciliation is the voluntary resumption or reestablishment of the relationship which formerly existed between the parties. While sexual intercourse constitutes strong evidence that the relationship has been resumed, proof of one act or of several isolated acts of sexual intercourse is not necessarily conclusive of the issue of reconciliation.
"The issue of reconciliation under C.C. art. 154 is an issue of fact to be determined in each particular case by consideration of all the activities of the parties and by all of the circumstances of the case. See Blanchard v. Blanchard, 234 La. 790, 101 So.2d 671 (1958); Garrett v. Garrett, 324 So.2d 494 (La.App. 2nd Cir. 1976). In order to establish a reconciliation which will break the continuity of a period of separation or constitute a condonation or forgiveness of past behavior, the overall circumstances must show a mutual intention by the parties to voluntarily resume their marital relationship.
"Intent is determined from the totality of the circumstances in each case."
Furthermore, reconciliation, and particularly the intent of the parties, are primarily questions of fact for the trial court whose decision shall not be disturbed unless manifestly erroneous.
The record supports the conclusion that there was a reconciliation. There was a mutual intention by the parties to resume voluntarily their marital relationship. The parties reestablished a single marital domicile. The husband moved his clothes and personal effects back home. They occupied the same bedroom. They attended various events, went out socially together, and went to church as a family. They engaged in sexual intercourse as husband and wife. The reconciliation lasted from September, 1977, to January, 1978. The reconciliation is plainly described by the wife as follows:
"Q. Now, since the judgment of separation was rendered in February 1977, have you and your husband gone back together as man and wife?
A. Yes, we did.
Q. When did you reconcile or go back together?
A. It was around September 10th of 1977.
Q. Do you remember the circumstances of the coming together again?
A. Yes, I had approached him several times and tried to get him to let's try to work things out, but it was never my intention to be the route we would take, that I did not want a divorce, did not want a legal separation. He was very reluctant at first and then he agreed that we would try to work things out.
Q. Did you and your husband have sexual relations after that time?
A. Yes, sir, we did.
Q. After September?
A. Yes, we did.
Q. How often?
A. At the beginning very often, sometimes two times during the day, and then it tapered off to maybe two or three times a week.
Q. And did your husband move back into the family home?
*1293 A. Yes, he did.
Q. Did you and he occupy the same bedroom?
A. Yes, we did.
Q. Who was living at home at the time besides your husband?
A. Bobby and Scott.
Q. Did Mr. Jordan bring his clothes back to the house, his personal affects?
A. Yes, he did.
Q. Did you and he go places together or with the family during the time that you were together?
A. Yes, we did.
Q. Like where?
A. We went to church as a family. We went out to eat. He and I went to movies together. We went and visited people. We went to our parents' homes.
Q. When did you separate?
A. January I believe the sixth.
Q. And who moved out of the house?
A. He moved out.
Q. And do you recall the circumstances of that separation?
A. Yes, I came home one night from work and he told me that he thought it was time for him to leave, that he was not happy, and it was not working out for him.
Q. And then what happened? What did you say to him?
A. I asked him, I said, well, I said, `Please, if, you know, if there are problems that we can talk about or is there some other direction we can go to work out the problems.' I was very ill at the time. I had a kidney infection, and he just said no that he did not think it would work out and that he had tried and for him it was not working out.
Q. Then did he leave?
A. Yes, he did.
Q. Was it by with your blessing that he leave, or agreement or consent?
A. No, it was not with my blessing, agreement or consent.
Q. Since he left, have you made any requests of him that he return to live with you?
A. Many."
Mrs. Jordan's testimony concerning the reconciliation is not disputed by the husband, although he classified it as an "attempted reconciliation." He, however, conceded that when he and his wife resumed living together in September, 1977, it was his "intention to patch up the marriage, to resume your husband and wife relationship."
We conclude that there was a reconciliation between the parties which extinguished the February, 1977, action of separation. LSA-C.C. art. 152; Hickman v. Hickman, 227 So.2d 14 (La.App. 3 Cir. 1969).
Relative to the contention concerning separation on the ground of abandonment, LSA-C.C. art. 143 authorizes separation on this ground where either spouse leaves the matrimonial domicile without lawful cause and constantly refuses to return to live with the other spouse. Abandonment, as a ground for separation, may be established as any other fact in a civil suit pursuant to LSA-C.C. art. 145. The record establishes that Mr. Jordan, after their reconciliation following an earlier separation, moved from the matrimonial domicile on January 6, 1978, without lawful cause. The wife made several requests to the husband to return to live with her, but he steadfastly refused to do so. In response to a letter in which the wife requested his return, the husband telephoned her that he was "not interested" in returning. The wife's testimony concerning the abandonment was corroborated by their teenage son, Scott.
From our review of the evidence, we find the husband has abandoned the wife; there has been a withdrawal from the matrimonial domicile without lawful cause and a constant refusal to return by the husband. Farkas v. Farkas, 264 So.2d 721 (La.App. 1 Cir. 1972); Belou v. Belou, 231 So.2d 580 (La.App. 4 Cir. 1970).
*1294 We agree with the fact findings and the decree of separation on the ground of abandonment in favor of the plaintiff made by the trial court. We find no abuse of the court's discretion. The judgment is, therefore, affirmed at the appellant's costs.
AFFIRMED.