712 So.2d 697 (1998)
Emily Cochrum BISHOP
v.
Lynden T. BISHOP.
No. 98-CA-59.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
Rehearing Denied July 17, 1998.
*698 Zoe Olivia Fleming, Jefferson, for Plaintiff/Appellant.
S. Guy deLaup, Metairie, for Defendant/Appellee.
Before GRISBAUM, GOTHARD and DALEY, JJ.
DALEY, Judge.
This is an appeal by Mrs. Bishop from a judgment granting a divorce pursuant to Louisiana Civil Code Article 102.

FACTS:
On September 18, 1996, Mrs. Emily Bishop filed for a divorce from Lynden T. Bishop, her husband of 46 years, in accordance with the provisions of Civil Code Article 102. Mrs. Bishop requested use of the family home and alimony pendente lite. On March 24, 1996, Mr. Bishop filed a Motion for Judgment of Divorce, alleging that 180 days had elapsed since the date he was served with the Petition for Divorce. Mr. Bishop alleged that he was entitled to divorce based on the grounds of six months living separate and apart, under Article 102. Mr. Bishop also requested use and occupancy of the family home.
Mrs. Bishop filed a Motion to Dismiss this matter, alleging that she and her husband reconciled on March 17, 1997. On April 8, 1997, the matter was set for hearing on the Motion for Judgment of Divorce. Mrs. Bishop asked for a continuance based on reconciliation. *699 She also claimed discovery was incomplete. Mr. Bishop's attorney argued that the alleged reconciliation was a farce, that Mrs. Bishop moved her clothing and furniture back into the home against Mr. Bishop's wishes and because of his advanced age, he was powerless to stop her. The trial court ruled to hold a hearing regarding use and occupancy of the family home on that date.
At the April 8, 1997 hearing, Mrs. Bishop testified that she and her husband purchased their home on David Drive in Metairie in 1972. She lived there continuously with her husband until September 1996 when she found pictures of a semi-nude woman which were allegedly taken by her husband in Lafrienere Park. The thirty-three year old woman depicted in the pictures is a friend of Mr. Bishop who drives him around occasionally. After leaving the family home, Mrs. Bishop lived with her children then rented an apartment. She testified that she moved back into her home on March 17, 1997 because she wanted to be with her husband. After moving her furniture and belongings back into the family home, Mrs. Bishop testified that she went to Pontchatoula for nine days to take care of her sick granddaughter. She stated that sometimes her husband acts as though he likes the fact that she moved back into their home, and at other times he acts indifferent.
Mr. Bishop testified that his wife left the family home in September 1996, taking almost all of the furniture and five thousand dollars in cash. He further testified that in March 1997, his wife "pushed herself" back into the house and he did not have the heart to kick her out. He and his wife have slept in separate bedrooms for the past 20 years. Mr. Bishop puts a shot gun against his bedroom door at night so that Mrs. Bishop does not come into his room while he is sleeping.
This matter was continued by the trial court due to time constraints. At the end of the hearing the court ordered that until this matter was concluded Mr. Bishop was awarded use of the family home. The trial judge ordered Mrs. Bishop to move out of the family home during the weekend of April 12-13, 1997. Mr. Bishop was ordered to pay $500 per month alimony pendente lite.
On April 29, 1997, the parties appeared in court to complete the hearing on use and occupancy of the family home and to attend the hearing on the Motion for Divorce. Mr. Bishop testified that he and his wife have lived separate and apart since Mrs. Bishop left the family home in September 1996. He further testified that he did not want to be married to Mrs. Bishop any longer and requested the court grant his divorce.
Mr. Bishop's grandson, Randal Pestoruis, testified that Mr. and Mrs. Bishop had lived separate and apart since September 1996. He further testified that Mr. Bishop sleeps with a chair propped against the door of his bedroom because he did not want Mrs. Bishop to enter his bedroom while he was asleep. Mr. Pestoruis testified that on the occasions when he passed in front of the Bishop home after Mrs. Bishop moved her belongings back into the home, Mrs. Bishop's car was not parked in front of the home.
Mrs. Bishop testified that she wanted to reconcile with her husband because she loves him. Sometimes Mr. Bishop appears to want to reconcile, while other times he does not want to reconcile. She testified that Mr. Bishop slept with a chair propped against his bedroom door prior to her moving back into the house. After moving her furniture and belongings back into the family home, Mrs. Bishop testified that she left for about eight days to take care of a sick granddaughter. She testified that after moving back into the house she cooked and cleaned for her husband and made pralines for him. She acknowledged that Mr. Bishop told her that he did not want to be married to her.
Mr. Bishop's two depositions were admitted into evidence as well as a stipulation that Mrs. Bishop was free from fault in the breakup of the marriage. In his deposition, Mr. Bishop stated that he had no desire to reconcile with his wife.
At the close of the testimony the trial judge granted a divorce finding that when Mrs. Bishop moved back into the house, there was objection by Mr. Bishop. The trial judge further stated that clearly 180 days elapsed from the date that Mr. Bishop was served with the Petition for Divorce and that *700 the parties had not reconciled. The trial judge also awarded use and occupancy of the family home to Mr. Bishop and ordered Mr. Bishop to pay $500 per month alimony to Mrs. Bishop.
This appeal was filed following the denial of Mrs. Bishop's Motion for New Trial.

DISCUSSION:
Louisiana Civil Code Article 102[1] provides:
A divorce shall be granted upon motion of a spouse when either spouse has filed a petition for divorce and upon proof that one hundred eighty days have elapsed from the service of the petition, or from the execution of written waiver of the service, and that the spouses have lived separate and apart continuously for at least one hundred eighty days prior to the filing of the rule to show cause.
The motion shall be a rule to show cause filed after all such delays have elapsed.
On appeal Mrs. Bishop argues that the trial court abused its discretion by granting a divorce to Mr. Bishop based upon the determination that the parties lived separate and apart continuously and voluntarily for 180 days without reconciliation. She contends that the record is void of testimony that the separation was voluntary and continuous. Mrs. Bishop also attacks the credibility of Mr. Pestorius, claiming that it is unclear where Mr. Pestorious' residence is located and suggesting that there may be ulterior motives for Mr. Pestorious' testimony.
In the case at bar there is no dispute that Mrs. Bishop left the family home prior to September 18,1996. There is also no dispute that she moved her furniture and belongings back into the home on March 17, 1997. Additionally, there is no dispute that after moving her furniture and belongings back into the family home, Mrs. Bishop spent nine days and nine nights in Pontchatoula, and did not return to the family home during this time. Accordingly, Mrs. Bishop did not begin to actually live back in the family home until March 26, 1997, two days after Mr. Bishop filed the Rule to Show Cause. Thus, even if we accepted Mr. Bishop's arguments that moving back into the family home interrupted the codal requirement of living separate and apart for 180 days prior to filing the Rule to Show Cause, she would not prevail because exactly 180 days elapsed from the time Mr. Bishop was served with the Petition for Divorce, (September 25, 1996), and the date the Rule to Show Cause was filed, (March 24, 1997).
Although Mrs. Bishop testified that she moved back into the home in order to reconcile with her husband, the testimony of Mr. Bishop was clear that he did not want to reconcile with his wife. During trial Mr. Bishop was asked "Do you want to be married to Emily Bishop any longer?" Mr. Bishop responded "Never. Never. Sorry I met her." When asked whether he had reconciled with his wife, he answered that he was "happy just as I am." Therefore, the fact that Mrs. Bishop moved back into the family home against the wishes of Mr. Bishop did not interrupt the codal requirement of living separate and apart continuously for 180 days.
The law is clear that reconciliation is an issue of fact to be decided by the trial court after careful consideration of the particular facts and circumstances of each particular case. Jordan v. Jordan, 394 So.2d 1291 (La.App. 1st Cir.1981); Millon v. Millon, 352 So.2d 325 (La.App. 4th Cir.1977). The overall circumstances of the case must show a mutual intention to resume their marital relationship in order for an alleged reconciliation to interrupt the continuity of a period of separation. Seymour v. Seymour, 423 So.2d 770 (La.App. 4th Cir.1982). The trial judge has much discretion and his factual findings are accorded very substantial weight on review. Tablada v. Tablada, 590 So.2d 1357 (La.App. 5th Cir.1991). The transcript reflects that Mrs. Bishop moved out of the matrimonial domicile and lived elsewhere from sometime prior to September 18, 1996, until March 26, 1997, when she physically moved back into the home. Even if we were *701 to accept Mrs. Bishop's date of March 17, 1996, as the date of Mrs. Bishop moving back into the home, this in itself would not interrupt the 180 day codal requirement of living separate and apart. Mr Bishop did not invite her to return and the testimony was clear that he did not want her in the home. In order for an alleged reconciliation to interrupt the 180 day time period for a divorce under Civil Code Article 102, the overall circumstances must show a mutual intention by the parties to voluntarily resume their marital relationship. There is ample evidence in the record to support the conclusion that there was no mutual intention to resume the marital relationship in this case.
Accordingly, we find that the evidence supports the trial court's granting of the Judgment of Divorce and we hereby affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] This is the wording of the code article which was in effect at the time of the hearing of this matter.