ROBERT A. CHAISSON, Judge.
lain this domestic proceeding, the sole issue presented is whether the trial court erred in finding that the parties had not reconciled, and granting a divorce pursuant to the provisions of La. C.C. art. 102. For the reasons that follow, we reverse the judgment of divorce granted by the trial court.

FACTS AND PROCEDURAL HISTORY

Ivan Orihuela and Gina Orihuela (hereinafter referred to by her maiden name of Signorelli) were married on December 26, 2007, and they thereafter established their matrimonial domicile in Jefferson Parish. On April 29, 2014, Mr. Orihuela filed a petition for divorce pursuant to La. C.C. art. 102. On May 5, 2014, Mr. Orihuela and Ms. Signorelli began living separate and apart. On the same date, Ms. Signo-relli filed an answer and reconventional demand for divorce pursuant to La. C.C. art. 102.
On January 7, 2015, Ms. Signorelli filed a motion for rule to show cause why divorce should not be granted under the provisions of La. C.C. art. 102 on the basis that the parties had been living separate and apart for the requisite period of time. On February 9, 2015, the court conducted a hearing on the rule, to show cause. Both Ms. Signorelli and Mr. Orihuela testified at the healing, and much of |sthe testimony was undisputed regarding the circumstances surrounding their relationship subsequent to the filing of the divorce petition.
According to Ms. Signorelli, the last day that she and Mr. Orihuela lived together was May 5, 2014. However, despite living separate and apart, the two maintained regular contact and had many conversations about reconciling. They routinely went to lunch or dinner together, engaged in sexual relations on numerous occasions, and spent nights at each other’s houses. She admitted that she had a key to his house, had knowledge of the alarm codes, and had gone there on one or two occasions even when Mr. Orihuela was not home. She acknowledged that at one point, they went to the store and bought various toiletries for her to keep at his house when she spent the night. Ms. Sig-norelli also testified that they went on brief trips together, including one in December of 2014, to celebrate their wedding anniversary. Although she claimed that the trip “became very disastrous,” she acknowledged that they went out to dinner to celebrate their anniversary and that Mr. Orihuela bought her jewelry on that trip.
In addition, Ms. Signorelli testified that Mr. Orihuela took out a life insurance policy naming her as the beneficiary in September of 2014, that they still have a joint checking account, and that on occasion, he has paid her rent as well as some of her credit card bills and expenses. During her testimony, Ms. Signorelli acknowledged that subsequent to the filing of the divorce petition, she “probably” texted Mr. Orihue-la numerous times that she loved him and also sent him a birthday card in January of 2015 professing her love for him and representing herself as his wife. She further admitted that in January of 2015, the two were having discussions about continuing the rule to show cause hearing. While acknowledging in her testimony all the time she spent with Mr. Orihuela, she claimed that there was no reconciliation between them. Ms. Signorelli denied |4telling Mr. Orihuela that she wanted to reconcile or move back in together and further denied representing herself as Mrs. Orihuela to any third parties. She *185 asserted that she made her decision not to reconcile since the filing of the divorce petition and also asserted that at no time since their physical separation did she present herself as someone who had reconciled with Mr. Orihuela.
Mr. Orihuela also testified at the hearing regarding the circumstances surrounding their relationship subsequent to the filing of the divorce petition. He maintained that ever since he filed for divorce, the two have been trying to reconcile and have spent a lot of time together. They ate out often, went to plays, and took trips together. According to Mr. Orihuela, he treated Ms. Signorelli as his wife and bought her lavish gifts for her birthday, Christmas, and anniversary. They engaged in sexual relations and spent nights at each other’s houses. In addition, they portrayed themselves to others as husband and wife. Mr. .Orihuela asserted in his testimony that the intent at all times was to reconcile, but they planned on living separate and apart until the lease on her rental house expired. Mr. Orihuela testified that they talked about continuing the January hearing on the rule to show cause, but then they got into an argument on January 27, 2015, which effectively ended their reconciliation.
After considering the evidence presented, the trial judge granted the motion for divorce and stated, in part, as follows:
All right. Submitted by both parties, and the issue before the Court is reconciliation. , Number one, have the parties lived separate and apart for six months prior to divorce? Yes, you have. So the question is have the parties reconciled. At this time, the Court finds that there was no reconciliation. There was no intent really or a meeting of the minds of the parties where reconciliation is concerned.
Occasionally, the parties appeared to have had sexual intercourse. They went out. They interacted in a social manner. And that in itself does not constitute reconciliation. With reconciliation, you have to have a meeting of the minds, and I didn’t find that in this ^situation. Did the parties • attempt to-reconcile? Yes, it appears that the parties attempted to reconcile. Did the parties reconcile? Again, I don’t think the parties reconciled.
On March 20, 2015, Mr. Orihuela filed a motion for appeal from the divorce judgment. In his appellate brief, he argues that the trial .court erred in finding that the parties had not reconciled and in thereafter granting a judgment of divorce pursuant to La. C.C. art. 102. We agree with this argument.

DISCUSSION

It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest, error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test. First, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court. Second, the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. Rather, the reviewing court must review the record in its entirety to -determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Stobart v. State through *186 Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier o'f fact’s findings. Bosell v. ESCO, 549 So.2d at 844, Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review where conflict exists in the testimony. However, where | (¡documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d at 882; Cosse v. Orihuela, 12-456 (La.App. 5 Cr. 1/30/13), 109 So.3d 950, 956, writ denied, 13-680 (La.4/26/13), 112 So.3d 850.
In the present case, the trial court found that a reconciliation had not occurred and thereafter granted the parties a divorce based on living separate and apart for the ■requisite period of time pursuant to La. C.C. art. 102. Mr. Orihuela contends that the evidence presented at the hearing showed that there was mutual intent to restore the marital relationship, and therefore, the trial court erred in finding that a reconciliation had not occurred.
La. C.C. art. 104 makes clear that the cause of action for divorce is extinguished by the reconciliation of the parties. In order to constitute reconciliation, the parties must intend to reestablish their marriage. Eppling v. Eppling, 537 So.2d 814, 819 (La.App. 5 Cir.1989), writ denied, 538 So.2d 619 (La.1989). The law is clear that reconciliation is an issue of fact to. be decided by the trial court after careful consideration of the particular facts and circumstances of each particular case. The overall circumstances of the case must show a mutual intention to resume their marital relationship in order for an alleged reconciliation to interrupt the continuity of a period of separation. The trial court has much discretion and its factual findings are accorded very substantial weight on review. Bishop v. Bishop, 98-59 (La.App. 5 Cir. 5/27/98), 712 So.2d 697, 700.
At the hearing on the rule to show cause, the testimony surrounding the circumstances' of their relationship subsequent to the filing of the divorce petition [7was basically undisputed. Although the parties began living separate and apart on May 5, 2014, it is clear that they maintained regulár contact and spent an extensive amount of time together. In particular, they went to lunch and dinner regularly, went on a couple of brief trips together, engaged in sexual relations, and spent nights at each other’s houses. It is further undisputed that the two celebrated their wedding anniversary, that he bought her jewelry and other items, that he paid her rent as well as some of her expenses on occasion, and thát he took out a life insurance policy naming her ás the beneficiary.
. The only disputed testimony at the hearing revolved around the parties’ intent to restore their marital relationship. Ms, Signorelli testified that since the filing of the divorce petition, she never intended to reconcile with Mr. Orihuela, and she made her intention clear to him. In contrast, Mr. Orihuela testified that the intent was clearly to resume the marital relationship. He maintained that he and Ms. Signorelli have been trying to reconcile since he filed the petition for divorce and that they planned to resume living together after the lease on her rental house had expired. After considering this conflicting testimo *187 ny on their intentions, the trial court determined that there “was no .intent really or a meeting of the minds of the parties where reconciliation is concerned.” ,
We acknowledge that the appellate court, generally does not disturb the factual findings of the trial court. However, the record in this case, including both the testimony and' evidence presented, is replete with proof that both parties intended to reconcile. Ms. Signorelli, in her testimony, admitted that the parties had many conversations about reconciling and that there were numerous attempts at reconciling. In addition, Mr.. Orihuela presented several text messages, which Ms. Signorel-li acknowledged sending to him, showing, that she clearly had the intent to reconcile. In particular, we-note Ms. Signorelli sent Mr. Orihuela a text | «message telling him, “Thanks for a great day ... Was sad to see U go ... You almost have me to the point of a complete reconciliation.” In other text messages, she spoke of what she wanted from their relationship, implored him not to leave her, and asked him if he was going to continue the rule to show cause hearing, Ms. Signorelli also admitted that she “probably” texted Mr, Orihue-la numerous times that she loved him. In addition, Ms. Signorelli admitted giving Mr. Orihuela a birthday card in January of 2015, in which she professed her love for him and represented herself as his wife.
Although we are reluctant to reverse a trial court’s factual findings, we are compelled to do so in the instant case as the record undoubtedly supports , a determination that the parties , reconciled. Accordingly, for the reasons set forth herein, we reverse the judgment of divorce granted by the trial court.

REVERSED